IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARY PATRICIA WEISS,

    *Plaintiffs*,

    v.

ALEX M. AZAR, II, SECRETARY,
UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES,
et al.[1]

    *Defendants*.

Civil Action No. ELH-17-1127

## MEMORANDUM OPINION

In this Memorandum Opinion, I resolve an appeal from the final decision of the Medicare

Appeals Council ("MAC"),[2] requiring a portion of the settlement proceeds obtained in a medical

malpractice case to be used to reimburse Medicare for medical expenses that it paid for the care of

the patient, who died a few days after surgery.

Mary Patricia Weiss, in her individual capacity and as the Personal Representative of the

Estate of Ronald A. Weiss (the "Estate"), her deceased husband, filed suit for declaratory relief

against defendants Thomas Price, M.D., Secretary of the United States Department of Health and

Human Services (the "Secretary"), and the United States Department of Health and Human

Services (the "Agency"). ECF 1-1 ("Complaint").[3] Plaintiff challenges the request of the

Agency's Centers for Medicare and Medicaid Services ("Medicare") for $26,404.20 from the

---

[1] The case was originally filed against Thomas E. Price in his official capacity as the Secretary of the United States Department of Health. Since then, Alex M. Azar, II has become the Secretary and is therefore substituted under Fed. R. Civ. P. 25(d).

[2] *See* ALJ Appeal No. 1-2359245381, Docket M-15-894.

[3] I shall use "plaintiff" interchangeably with "the Estate" or "Ms. Weiss as the Personal Representative of the Estate."

$600,000 in settlement proceeds obtained by plaintiff in connection with a medical malpractice action litigated in Baltimore County.

Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Ms. Weiss, in her individual capacity, sought a declaration that Medicare "has no legal interest in the escrowed settlement funds recovered by Mary Weiss as a result of the wrongful death of her husband, Ronald A. Weiss." *Id.* at 11. As Personal Representative of the Estate, she also asks this Court to (1) reverse findings made by the MAC, and (2) award the Estate "an interest penalty" due to the length of time the settlement funds have been escrowed. *Id.* at 11-12.

By Memorandum (ECF 22) and Order (ECF 23) of March 5, 2018, I dismissed the claims filed by Ms. Weiss in her individual capacity. Thereafter, pursuant to Fed. R. Civ. P. 54(b), she moved to certify as final the Court's judgment dismissing her individual claims. ECF 28 (the "Motion"). Defendants opposed the Motion. ECF 29. That Motion is pending.

Plaintiff filed a brief in support of the appeal of the MAC's decision on June 22, 2018. ECF 30 ("Appeal"). Medicare filed its opposition. ECF 31 ("Opposition"). Plaintiff replied (ECF 32), and Medicare filed a surreply. ECF 33; *see also* ECF 27.[4]

The Appeal and the Motion have been fully briefed, and no hearing is necessary to resolve them. *See* Local Rule 105.6. For the reasons that follow, I shall affirm the order of the MAC and deny the Motion as moot.

---

[4] The parties agree that their submissions are akin to cross-motions for summary judgment. ECF 27.

# I.    Factual Background

Ms. Weiss's late husband, Ronald A. Weiss ("Mr. Weiss" or the "Decedent"), was a Medicare recipient.  Administrative Record ("A.R.") 126-159 ("ALJ Decision") at 127.[5]  In July 2007, Mr. Weiss was informed by a physician that he needed heart surgery to "redo" his coronary artery bypass surgery. A.R. at 130.  It appears undisputed that the surgery was medically necessary. A.R. at 32.

According to plaintiff, the physician falsely told Mr. Weiss that the surgeon who performed his initial bypass surgery was unavailable. A.R. 165-207 ("State Court Complaint") at 203. Therefore, a less experienced surgeon performed the second operation. *Id.*

Mr. Weiss underwent heart surgery on August 3, 2007, at St. Joseph Medical Center, Inc. (the "Hospital"). During the surgery, the surgeon allegedly punctured a vein and several arteries, causing massive bleeding that necessitated further surgery. *Id.* Mr. Weiss died from complications on August 6, 2007. *Id.* at 197, 203.  During the three-day period that culminated in Mr. Weiss's death, Medicare spent about $50,468 on his care.  A.R. at 4, 101 ("Payment Summary Form").

On July 30, 2010, Ms. Weiss, individually, and as Personal Representative of the Estate of Ronald Weiss, and to the use of their four adult children, filed a medical malpractice lawsuit in the Circuit Court for Baltimore County against 60 defendants, including many physicians and the Hospital.  *See* A.R. 165-207; *id.* at 153 n.4.  On behalf of the Estate, the suit contained six counts: fraud (A.R. at 197-199); battery (A.R. at 199); intentional failure to obtain informed consent (A.R. at 200); negligent failure to obtain informed consent (A.R. at 201-02); medical negligence (A.R.

---

[5] The Administrative Record is docketed at ECF 10.  But, it exists only in paper format and is filed under seal.  ECF 14.  Therefore, I will cite directly to the page numbers of the Administrative Record.

at 202-04); and breach of warranty (A.R. at 204). In her individual capacity, Ms. Weiss brought a wrongful death action (A.R. 205). Ms. Weiss sought both compensatory damages, in excess of $60,000, and punitive damages.  A.R. at 199.

Prior to trial, the parties to the medical malpractice lawsuit reached a confidential settlement.  A.R. 404 ("Final Settlement Detail Document").[6]  Ms. Weiss has not produced a copy of this settlement. A.R. at 152. But, her counsel acknowledges that "the settlement agreement released all claims against the Defendants, including claims for medical bills."  ECF 32 at 12. Notably, the amount of damages to which Ms. Weiss was entitled for her wrongful death claim, and the amount due to the Estate, were not judicially determined at that time.

On September 21, 2012, Ms. Weiss filed a "Petition for Court Approval of Settlement and Allocation," requesting that the Circuit Court for Baltimore County allocate the settlement proceeds between Ms. Weiss and the Estate.  A.R. 509-22 ("Petition for Approval of Settlement"). Plaintiff also included a draft order. *Cf. id.* at 512 ("Plaintiff's Certification of Service") ("[O]n this 21st day of September, 2012, a copy of Plaintiff's Petition for Court Approval of Settlement Amount and Allocation Thereof *and attached Order*, were hand delivered to . . . .") (emphasis added).

Ms. Weiss told the State court that she had accepted a settlement offer, *id.* at 509, and she asked that court "to allocate the entire amount of the settlement to [her] Wrongful Death Claim" because the Estate had "no viable claims."  A.R. at 415; *id.* at 417. Ms. Weiss claimed that Mr. Weiss "was sedated after his operation until his death" and therefore "suffered no conscious pain and suffering as a matter of law for which his Estate could recover." *Id.* at 416. She also claimed

---

[6] The document indicates that the case was settled on November 1, 2012. *Id.*  However, it appears to have settled prior to that date.

that the surgery was "needed . . . to repair his heart condition," so "the cost of the operation itself could not be an element of damages for which the Estate could recover." *Id.* And, she asserted that she, not the Estate, paid for the funeral. *Id.*

On September 25, 2012, the State court judge signed the proposed order submitted by plaintiff's counsel. A.R. at 69 ("State court order" or "State court allocation"); *see also id.* at 5 (MAC decision) ("[T]he state court judge signed the proposed Order written and submitted by the appellant's counsel."); *id.* at 152 (ALJ decision) ("[T]he Circuit Court Judge signed the proposed Order that had been submitted and prepared [by] the Appellant's counsel."). The order stated, *id.*:

(1) That no claim for the costs of Ronald Weiss' heart surgery at St. Joseph Hospital could be made since the evidence showed that the operation was indicated and not caused by negligence;

(2) That the evidence indicates Ronald Weiss had no conscious pain and suffering after his operation until his death; and

(3) That the funeral expenses were not paid from the Estate of Ronald Weiss.

Accordingly, the court allocated all of the settlement proceeds to the wrongful death claim of Ms. Weiss. *Id.*; *see also* ECF 1-1, ¶¶ 28, 30, 32.

On October 19, 2012, the Medicare Secondary Payer Recovery Contractor ("MSPRC") informed plaintiff that it received notification of the liability insurance claim. A.R. 408-412 (MSRPC notification) at 408. The letter also confirmed the establishment of a MSP recovery case. *Id.* On November 19, 2012, Medicare asked the Estate to reimburse the Agency in the sum of $50,648.45 for the medical expenses incurred on the Decedent's behalf during August 2007. A.R. 393-398 (initial demand letter) at 393. However, on December 15, 2013, Medicare reduced its

demand to $26,404.20 to reflect the Estate's procurement expenses. *Id.* at 361 (MSPRC revised demand letter, dated July 26, 2013).[7]

The Estate challenged the Agency's demand through the four-level administrative process. *See* 42 U.S.C. § 1395ff; *see also* 42 C.F.R. §§ 405.940, 405.960, 405.1000, 405.1100. An appeal is first heard by the Medicare Secondary Payer Recovery Contractor (MSPRC). It then proceeds before a Qualified Independent Contractor. That matter is followed by a proceeding conducted by an Administrative Law Judge. Ultimately, the matter is heard by the Medicare Appeals Council. Under 42 U.S.C. § 405(g), the statute affords Medicare beneficiaries a mechanism for judicial review if the beneficiary has obtained a final decision under the Agency's administrative process. *Id.* When Congress authorized judicial review of Medicare decisions under § 405(g), it specifically foreclosed any other judicial review of the Agency's decisions. *See* 42 U.S.C. § 405(h) (incorporated into the Medicare Act by 42 U.S.C. § 1395ii) ("No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or government agency except as herein provided.").

At each stage of the administrative appeals process, the Estate was found liable for the amount sought by Medicare. *See* A.R. 492-97 (MSPRC demand letter, dated November 19, 2012); A.R. 432-434 (MSPRC redetermination, dated December 15, 2013); A.R. 330-37 (decision of Qualified Independent Contractor, dated March 5, 2014); A.R. 125-62 (decision of the Administrative Law Judge, dated August 25, 2014); A.R. 1-17 (decision of the MAC, dated February 23, 2017). This suit followed.

---

[7] "When the primary payer is the recipient of a settlement, . . . CMS's reimbursement is reduced by its portion of the legal fees and costs that were incurred in obtaining the settlement ('the procurement costs')." *Benson v. Sebelius*, 771 F. Supp. 2d 68, 70 (D.D.C. 2011) (citing 42 C.F.R. § 411.37(a)).

## II. Standard of Review

The Administrative Procedure Act ("APA") provides the statutory basis for a court to review the final action of a federal agency. *See* 5 U.S.C. § 702; *see also Ergon-W. Va., Inc. v. U.S. Envtl. Prot. Agency*, 896 F.3d 600, 609 (4th Cir. 2018); *Roland v. U.S. Citizenship & Immigration Servs.*, 850 F.3d 625, 629 n.3 (4th Cir. 2017); *Friends of Back Bay v. U.S. Army Corps of Eng'rs,* 681 F.3d 581, 586 (4th Cir. 2012); *Lee v. U.S. Citizenship & Immigration Servs.,* 592 F.3d 612, 619 (4th Cir. 2010); *Ohio Valley Envtl. Coal v. Aracoma Coal Co.,* 556 F.3d 177, 192 (4th Cir. 2009). Notably, "claims brought under the APA are adjudicated without a trial or discovery, on the basis of an existing administrative record . . . ." *Audubon Naturalist Soc'y of the Cent. Atl. States, Inc. v. U.S. Dep't of Transp.*, 524 F. Supp. 2d 642, 659 (D. Md. 2007) (citing *Citizens for the Scenic Severn River Bridge, Inc. v. Skinner*, 802 F. Supp. 1325, 1332 (D. Md. 1991), *aff'd*, 1992 WL 180138, 1992 U.S. App. LEXIS 17466 (4th Cir. July 29, 1992)). In this context, "review of the administrative record is primarily a legal question." *Citizens for the Scenic Severn River Bridge*, 802 F. Supp. at 1332.

"The APA provides that a reviewing court is bound to 'hold unlawful and set aside agency action' for certain specified reasons, including whenever the challenged act is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Friends of Back Bay*, 681 F.3d at 586-87 (quoting 5 U.S.C. § 706(2)(A)); *see United States v. Bean*, 537 U.S. 71, 77 (2002). Review under the APA is highly deferential, however, and the agency action enjoys a presumption of validity. *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009) (citing *Natural Res. Def. Council, Inc. v. EPA*, 16 F.3d 1395, 1400 (4th Cir. 1993)).

In assessing an agency decision, "the reviewing court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of

judgment.'" *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). Notably, "[t]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "Deference is due where the agency has examined the relevant data and provided an explanation of its decision that includes 'a rational connection between the facts found and the choice made.'" *Ohio Valley Envtl. Coal.*, 556 F.3d at 192 (quoting *State Farm*, 463 U.S. at 43). Thus, "[t]he agency action will stand if the record reveals a rational basis for the decision." *Oddo v. Reno*, 175 F.3d 1015, 1999 WL 170173, at *2 (4th Cir. Mar. 29, 1999) (unreported) (citing *Trinity Am. Corp. v. U.S. EPA*, 150 F.3d 389, 395 (4th Cir. 1998); *Clevepak Corp. v. U.S. EPA*, 708 F.2d 137, 141 (4th Cir. 1983)).

"[T]he MAC's decision stands as the final decision of the Secretary." *Paraskevas v. Price*, No. 16-9696, 2017 WL 5957101, at *1 (N.D. Ill. Nov. 27, 2017) (citing *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001) (stating that when the MAC adopts the administrative law judge's decision, that decision is the final decision of the Secretary)). As to judicial review of factual determinations, "the Medicare statute specifies that 'the findings of the [Secretary] as to any fact, if supported by substantial evidence, shall be conclusive.'" *Almy v. Sebelius*, 679 F.3d 297, 301 (4th Cir. 2012) (quoting 42 U.S.C. § 405(g) (alteration in original).

Substantial evidence requires "'more than a mere scintilla. [I]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 301-02 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Accordingly, district courts "do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the Secretary. Where conflicting evidence allows reasonable minds to

differ . . . , the responsibility for that decision falls on the Secretary." *Almy*, 679 F.3d at 302 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Accordingly, my review of factual determinations is "necessarily a limited one." *Almy*, 679 F.3d at 302.

### III.    Discussion

#### A.  Medicare Secondary Payer Statute

Medicare is a federal program providing health insurance primarily to individuals aged 65 and older and some disabled individuals under age 65. *See* 42 U.S.C. §§ 1395 *et seq.*  In 1980, "[t]o preserve Medicare's financial integrity [and] curb skyrocketing Medicare costs," Congress enacted the Medicare Secondary Payer ("MSP") statute. *See* 42 U.S.C. § 1395y(b); *Salveson v. Sebelius*, No. 10-4045, 2012 WL 1665424, at *1 (D.S.D. May 11, 2012) (internal quotations omitted); *see also* Omnibus Reconciliation Act of 1980, Pub. L. No. 96-499, § 953, 94 Stat. 2599, 2647 (1980).

Pursuant to the MSP statute, when another payer (the "primary plan") is available, Medicare, as the "secondary plan," is not responsible for paying for the medical services. 42 U.S.C. § 1395y(b)(2)(A).  A primary plan is "a group health plan[,]. . . a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance[.]" *Id.*  A primary plan may also be an "entity that engages in a business, trade, or profession" and that "carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part." *Id.*  Of relevance here, a tortfeasor can also be a "primary plan." *See, e.g.*, *Taransky v. Sec'y of Health & Human Servs.*, 760 F.3d 307, 313-14 (3rd Cir. 2014); *Hadden v. United States*, 661 F.3d 298, 302 (6th Cir. 2011); *Anderson v. Burwell*, 167 F. Supp. 3d 887, 900 (E.D. Mich. 2016); *Weinstein v. Sebelius*, No. 12-154, 2013 WL 1187052,

at *3 (E.D. Pa. Feb. 13, 2013), *report and recommendation adopted*, No. 12-154, 2013 WL 1187048 (E.D. Pa. Mar. 22, 2013).

When the primary plan is unlikely to pay "promptly" for a beneficiary's covered medical services, Medicare makes "a conditional payment" to ensure the beneficiary receives the services. 42 U.S.C. § 1395y(b)(2)(B)(i). "[I]t is expected that Medicare will ordinarily pay for the beneficiary's care in the usual manner and then seek reimbursement from the private insurance carrier after, and to the extent that, such carrier's liability under the private policy for the services has been determined." H.R. Rep. 96-1167, *as reprinted in* 1980 U.S.C.C.A.N. 5526, 5752 (1980).

In some circumstances, a Medicare beneficiary may also be liable for the conditional payment. Specifically, a Medicare beneficiary who "receives payment from a primary plan" must reimburse Medicare "for any payment made by the Secretary . . . with respect to an item or service if it is demonstrated that such primary plan . . . has or had a responsibility to make payment with respect to such item or service." 42 U.S.C. § 1395y(b)(2)(B)(ii).

In 2003, Congress amended the MSP statute, clarifying that a primary plan's "responsibility" could be "demonstrated by [1] a judgment, [2] a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or [3] by other means." 42 U.S.C. § 1395y(b)(2)(B)(ii); *see* Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173, § 301, 117 Stat. 2066, 2221-22.

Of import here, "other means" of demonstrating a primary plan's responsibility include the settlement of a lawsuit. 42 C.F.R. §§ 11.22(a)-(b)(3). In *Anderson*, 167 F. Supp. 3d at 897, the court said (internal citations omitted):

If a Medicare beneficiary seeks medical expenses as damages in a lawsuit, and the parties settle the claim, the settlement demonstrates the tortfeasor's responsibility for those medical expenses, regardless of whether the tortfeasor admits liability. The tortfeasor then becomes obligated to reimburse Medicare for the medical expenses. If, however, the tortfeasor directly pays the settlement proceeds to the Medicare beneficiary, Medicare may seek reimbursement from the beneficiary.

The scope of the beneficiary's liability to Medicare "is ultimately defined by the scope of his own claim against the third party." *Hadden*, 661 F.3d at 302 (emphasis omitted); *accord Taransky*, 760 F.3d at 315; *Anderson*, 167 F. Supp. 3d at 897-98; *Weinstein*, 2013 WL 1187052, at *4. The scope of the liability does not change "if the beneficiary later 'compromise[s]' as to the amount owed on the claim . . . even if the third party never admits liability." *Hadden*, 661 F.3d at 302. Therefore, a settlement does not change the scope of the plaintiff's liability. *Id.* "This rule comports with the text of the MSP Act and the Medicare [Secondary Payer] Manual . . . [and] ensures that 'a beneficiary cannot tell a third party that it is responsible for all of his medical expenses, on the one hand, and later tell Medicare that the same party was responsible for only a compromise percentage of them, on the other hand.'" *Taransky*, 760 F.3d at 315 (quoting *Hadden*, 661 F.3d at 302) (alteration omitted).

For example, in *Hadden*, 661 F3.d at 300, the plaintiff was injured in a motor vehicle accident and sued the driver, seeking damages for his medical expenses. Plaintiff settled the case, receiving $125,000 in exchange for the release of all of his claims against the defendant driver. But, plaintiff argued that his injury was

primarily the fault of an unidentified motorist who had caused the [defendant's] truck to swerve into him; that motorist was responsible for 90% of Hadden's damages, with [the defendant] responsible for only 10%; and thus [the defendant's] payment of $125,000 represented only 10% of Hadden's total damages, meaning that it only compensated him for 10% of his medical expenses, or about $8,000. The remaining $117,000 or so of the settlement, Hadden says, compensated him for damages other than medical expenses (e.g. pain and suffering)—and was therefore off-limits to Medicare.

*Id.* at 301.

The *Hadden* Court rejected the plaintiff's proposed means of limiting his responsibility. *See id.* at 302-03. It reasoned that in the 2003 amendments to the MSP statute, Congress specified how "responsibility" may be demonstrated. *Id.* at 302. As a result, the court concluded that responsibility "is no longer an undefined term in which courts might funnel their own notions . . . of equitable apportionment." *Id.* Rather, "if a beneficiary makes a 'claim against [a] primary plan[,]' and later receives a 'payment' from the plan in return for a 'release' as to that claim, then the plan is deemed 'responsib[le]' for payment of the 'items or services included in' the claim." *Id.* (quoting 42 U.S.C. § 1395y(b)(2)(B)(ii)) (alterations in original). Because plaintiff had sought full damages for his medical expenses in his underlying complaint, the court rejected his effort to limit his liability based on the settlement.

The Medicare Secondary Payer Manual (the "MSP Manual" or the "Manual") is consistent with this construction. It states that "Medicare policy requires recovering payments from liability awards or settlements, whether the settlement arises from a personal injury action or a survivor action, without regard to how the settlement agreement stipulates disbursement should be made." MSP Manual, Ch. 7, § 50.4.4.[8] According to the MSP Manual, "liability payments are usually based on the injured or deceased person's medical expenses." *Id.* Therefore, the payments "are considered to have been made 'with respect to' medical services related to the injury even when the settlement does not expressly include an amount for medical expenses." *Id.*

---

[8] CMS manuals are available at https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Internet-Only-Manuals-IOMs.html. However, as of this date and the date of the MAC's decision, "Chapter 7 of the MPSM is not posted on the CMS website because it is undergoing revision." A.R. at 10 n.1. According to the MAC, "the provisions in Chapter 7 that are quoted" in its decision "were in effect and available during the dates at issue." *Id.*

The "only situation in which Medicare recognizes allocations of liability payments to nonmedical losses is when payment is based on a court order *on the merits* of the case." *Id.* (emphasis added); *accord Taransky* at 315. If a court "specifically designate[s] amounts that are for payment of pain and suffering or other amounts not related to medical services, Medicare will accept the Court's designation." MSP Manual, Ch. 7, § 50.4.4. Indeed, in such cases, Medicare "does not seek recovery from portions of court awards that are designated as payment for losses other than medical services." *Id.*

In Maryland, Medicare does not seek recovery from portions of court awards that are designated as payment for wrongful death. The Manual states: "When a liability insurance payment is made pursuant to a wrongful death action, Medicare may recover from the payment only if the State statute permits recovery of these medical expenses." MSP Manual, Ch. 7, § 50.5.4.1.1. But, "[i]f a wrongful death statute does not permit recovering medical damages, Medicare has no claim to the wrongful death payments." *Id.*

Maryland's Wrongful Death Act provides that "damages may be awarded to the beneficiaries proportioned to the injury resulting from the wrongful death." Md. Code (2013 Repl. Vol., 2018 Supp.), § 3-904(c) of the Courts and Judicial Proceedings Article ("C.J."). These damages "are not limited or restricted by the 'pecuniary loss' or 'pecuniary benefit' rule but may include damages for mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, parental care, filial care, attention, advice, counsel, training, guidance, or education where applicable[.]" *Id.* § 3-904(c). However, the statute does not specify that wrongful death beneficiaries may recover medical damages. *Cf. Spangler v. McQuitty*, 449 Md. 33, 43–44, 141 A.3d 156, 162 (2016) ("[A] wrongful death action was enacted to allow surviving relatives and beneficiaries 'who [were] wholly dependent on the decedent, to recover

13

damages for his or her own loss accruing from the decedent's death.'") (quoting *Mummert v. Alizadeh*, 435 Md. 207, 219-20, 77 A.3d 1049, 1056 (2013)); *Stewart v. United Elec. Light & Power Co.*, 104 Md. 332, 341, 65 A. 49, 53 (1906) ("[The wrongful death statute] has created a new cause of action for something for which the deceased person never had, and never could have had, the right to sue; that is to say, the injury resulting from his death.").

The parties seem to agree that, in Maryland, Medicare has no claim to funds allocated to a wrongful death beneficiary based on a court order adjudicating the merits of the case. *See* A.R. at 333 (decision of Qualified Independent Contractor) ("The Maryland wrongful death statute is not at issue in this case, as both sides agree that Medicare does not have the right to recover from a wrongful death recovery under Maryland law.").

## B. The MAC's Decision

In a comprehensive opinion, the ALJ determined that Medicare is entitled to reimbursement of $26,404.20. On appeal, the MAC found no error in the ALJ's opinion and affirmed Medicare's entitlement to the requested recovery of the monies it expended for medical care rendered to the Decedent.

The MAC first determined that the State court order was not a determination made "on the merits" of the case. A.R. at 13-14. It found "no evidence in the record corroborating whether the [State] court held a hearing, and if so, what transpired." A.R. at 13. Further, the exhibits presented to the State court judge were "limited" and "did not show the disposition of the appellant's remaining claims[.]" *Id.* Therefore, the MAC concluded that plaintiff's counsel "sought a unilateral allocation to benefit his client in an attempt to eliminate Medicare's right to recovery for conditional payments made on behalf of the late beneficiary." *Id.* at 14.

Next, the MAC rejected plaintiff's argument for the application of equitable allocation of the settlement. It reasoned that plaintiff had "the burden to show that none of the damages relied upon in negotiating the settlement were medical damages." *Id.* at 15. In its view, the record did not "provide" and plaintiff's counsel did "not establish a means to allocate the settlement amount." *Id.* Further, plaintiff's counsel introduced no evidence in support of the "assertion that all the causes of action alleging medical damages were not part of the settlement." *Id.* Even if the MAC "was amenable to proportionately reducing Medicare's recovery amount to match the medical damages portion of the settlement," it had "no basis on which [it] could make that calculation." A.R. at 15-16.

Finally, the MAC was not persuaded by plaintiff's contention that Medicare was legally entitled only to damages caused by negligence. A.R. at 16. The MAC noted that the State court complaint included medical damages arising not only from negligence but also from fraud and battery. *Id.* Therefore, it concluded that the burden rested on plaintiff "to show which medical expenses were unrelated to the alleged negligence and not used to procure the liability settlement." A.R. at 16. Yet, according to the MAC, plaintiff's counsel introduced no evidence to show what medical care was unrelated to the medical malpractice claims in the State litigation. *Id.* Nor did counsel introduce any evidence, "[o]ther than [his own] assertions," to "show that the medical treatment attributable to negligence is limited to $12,179.37" or that only negligent medical services were "used to procure the liability settlement." *Id.*

### C. Issues Presented

In the appeal of the MAC's decision, the following two issues were presented. ECF 30 at 1:

> 1. What portion of a $600,000 settlement of a wrongful death beneficiary claim and estate survivor benefits claim is available to satisfy Medicare's claim against the Estate for reimbursement of medical bills?

15

2. Was the Medicare Appeals Council legally and/or factually incorrect when it rejected the settlement order of the Circuit Court for Baltimore County, equitable apportionment, and reduction of the requested amount?

Here, plaintiff contends that the MAC is bound by the State court's allocation of the entire settlement to Ms. Weiss as the wrongful death beneficiary. ECF 30 at 8-14. Further, plaintiff claims that if Medicare is not bound by the State court's order, then this Court should reverse the MAC and equitably apportion the settlement. *Id.* at 14-18. And, plaintiff argues that if equitable apportionment does not apply, then Medicare is entitled only to damages related to plaintiff's negligence. *Id.* at 18-19. Plaintiff also maintains that, if the Court accepts the MAC's ruling, the Court should determine the portion of the settlement that belongs to Ms. Weiss in her individual capacity and the part that belongs to her as Personal Representative of the Estate. *Id.* at 20.

### 1. The MAC is not bound by the State court's damages allocation

The MAC's decision not to follow the State court's allocation of damages is supported by substantial evidence and is neither arbitrary nor capricious.[9]

As previously noted, the MSP Manual states that the "only situation in which Medicare recognizes allocations of liability payments to nonmedical losses is when payment is based on a court order *on the merits* of the case." MSP Manual, Ch. 7, § 50.4.4 (emphasis added). Plaintiff contends that the MAC improperly relied on the Manual's "on the merits" standard. ECF 30 at 11. The Manual, plaintiff reasons, is not binding law and is not entitled to *Chevron* deference. *Id* at 11-12; *see Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) (holding that courts defer to an agency's permissible construction of an ambiguous statute).

---

[9] The parties dispute whether the State court had jurisdiction to issue the order. *See* ECF 30 at 10-11; ECF 31 at 24-25. This question was not addressed by the MAC and need not be resolved here.

The MAC's reliance on the Manual was not misplaced. The Manual "'reflect[s] a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" *Taransky*, 760 F.3d at 314 n.7 (quoting *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 399 (2008)) (internal quotations omitted). Although agency manuals are not binding law, they nevertheless have persuasive force, as the Supreme Court explained in *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000) (internal citations omitted) (emphasis added):

> Interpretations such as those in opinion letters—like interpretations contained in policy statements, *agency manuals*, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference. Instead, interpretations contained in formats such as opinion letters are "entitled to respect" under our decision in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), but only to the extent that those interpretations have the "power to persuade."

The Third Circuit reached the same conclusion as to the MSP Manual in *Hadden*, stating, 661 F.3d at 308: "The MSP Manual is not the product of formal, notice-and-comment rulemaking and, as such, the deference it enjoys hinges on its ability to persuade[.]" *See also Bradley v. Sebelius*, 621 F.3d 1330, 1338 (11th Cir. 2010). Indeed, courts regularly apply the "on the merits" standard, evidencing its significant persuasive force. *See, e.g.*, *Taransky*, 760 F.3d at 318-319 (applying "on the merits" standard); *Paraskevas*, 2017 WL 5957101, at *7-9 (same); *Anderson*, 167 F. Supp. 3d at 901 (same); *Weinstein*, 2013 WL 1187052 at *6-7 (same). *But see Bradley*, 621 F.3d at 1339. Moreover, "[p]laintiff has provided no support for finding that" the Manual's "on the merits" standard is "not reasonable and consistent with the Medicare Act and its goals[.]" *Paraskevas*, 2017 WL 5957101, at *10. Therefore, plaintiff's argument is not persuasive.

In addition, plaintiff contends that the "on the merits" standard is "impossible and undefined." ECF 30 at 11. In plaintiff's view, it "allow[s] Medicare to unliterally decide when it may recover money and when it is not so entitled." *Id.* Plaintiff is mistaken. Courts have applied the standard in several cases. *See supra*. Like the MAC here, courts have often followed the

standard articulated by *Taransky*, 760 F.3d at 318 (quoting BLACK'S LAW DICTIONARY 1199 (9th ed. 2009)): "A court order is 'on the merits' when it is 'delivered after the court has heard and evaluated the evidence and the parties' substantive arguments.' . . . [and not where the] state court, in effect, rubber stamped [the] request." *See also* A.R. at 13 (quoting BLACK'S LAW DICTIONARY 1123 (8th ed. 2004)); *Paraskevas*, 2017 WL 5957101, at *7 (quoting *Taransky*, 760 F.3d at 318); *Anderson*, 167 F. Supp. 3d at 901 (same).

According to plaintiff, the State court allocation was decided "on the merits" because the State court "conducted a hearing" and "examined the evidence presented." ECF 30 at 12. The evidence consisted of the following, according to the MAC, A.R. at 13:

> [A]n affidavit from Mrs. Weiss that she, and not the Estate, paid Mr. Weiss's funeral bill; deposition testimony from plaintiff's expert that recommend[ed] the procedure was not negligence; and portions of medical records that showed that Mr. Weiss was sedated following the operation until his death and did not experience conscious pain and suffering as the term is understood under Maryland law.

To be sure, it is not uncommon for a court to sign an uncontested order. But, in the context of this case, I agree with the MAC, which said: "[T]he state court judge . . . seems to have rubber stamped the appellant's request for settlement approval and an allocation to wrongful death claims." A.R. at 14.

The allocation of settlement funds is clearly an important matter that may have a variety of implications. But, like the MAC, I found "no evidence in the record corroborating whether the court held a hearing, and, if so, what transpired." A.R at 13; *see Anderson*, 167 F. Supp. 3d at 901 (state court order was not on the merits where there was testimony but none on "the particulars of the Medicare lien" and where there was no evidence that court reviewed medical evidence); *see also Weinstein*, 2013 WL 1187052 at *6-7 (plaintiff's failure to demonstrate that the court

adjudicated the matter after a hearing weighed against finding that the court order was "on the merits").

Moreover, the record does not reflect the basis for the requested allocation. Nor did plaintiff's exhibits "show the disposition of the appellant's remaining claims, including fraud and battery claims, for which the appellant claimed medical damages." A.R. at 13. And, the MAC could not determine whether "the court was made aware of the remaining claims in the appellant's Complaint." *Id.* As prior courts have recognized, "[t]he state court judge's lack of familiarity with the procedural history of the case or previous settlement negotiations [is] a factor indicating that the state court order was not on the merits." *Paraskevas*, 2017 WL 5957101, at *7 (internal quotations omitted); *see also Weinstein*, 2013 WL 1187052 at *7 ("Even if [plaintiff] could establish the . . . Court adjudicated the matter after a hearing, and Medicare was properly noticed, such adjudication was not 'on the merits' because the facts presented to the court regarding the amount Medicare was seeking were not fully developed.").

In addition, there is no indication in the record that the State court's order was the product of an adversarial process. In effect, Ms. Weiss stood on both sides of the process: one side in her individual capacity, the other as Personal Representative of the Estate. "The lack of any . . . adversarial process between the parties to the settlement provides strong evidence that the state court never considered the merits of this case." *Paraskevas*, 2017 WL 5957101, at *7.

Finally, plaintiff contends that the State court order here is analogous to the one at issue in *Bradley* and should therefore be treated as an order on the merits. ECF 30 at 12-13. A panel of the Eleventh Circuit concluded in *Bradley* that a state probate court's allocation was on the merits and limited Medicare's ability to recover wrongful death settlement proceeds. *Bradley*, 621 F.3d at 1339 n.22. However, the probate court, unlike the State court here, "heard sworn testimony on the

potential value" of the independent claims of each of the deceased's ten children. *Id.* at 1333. It also "call[ed] on its own experience in the range of values each child's claim potentially carried." *Id.* at 1333. Furthermore, the state court was aware of the amount Medicare sought to recover. *Id.*

The State court in the instant matter, however, does not appear to have held a hearing or heard sworn testimony. A.R. at 13. Nor could I identify any evidence in the record that the State court drew on its own experience in valuing the claims. Moreover, there is no indication that it was aware of a claim for reimbursement by Medicare. Accordingly, *Bradley* is inapposite here. *See also Paraskevas*, 2017 WL 5957101 at *9 (distinguishing *Bradley* because the state court in *Paraskevas* held no hearing nor made its decision "based upon its own experience or its own prioritization of recovery"); *Taransky* 760 F.3d at 320 (distinguishing *Bradley* on several bases, including that the state court in *Taransky* "did not adjudicate a substantive issue (i.e., how funds should be divided between the parties before the court)"); *Anderson*, 167 F. Supp. 3d at 901 (concluding that *Bradley* was inapposite because the state probate court "specifically took the testimony of the decedent's heirs and found that a substantial portion of the settlement amount was for the children's loss of parental companionship, a non-medical loss.").

## 2. Equitable apportionment does not apply here

Plaintiff argues in the alternative that Medicare can only recover a limited share of its conditional payment. According to plaintiff, "[n]othing in the Medicare statutes or regulations, or the MSP[] [Manual] provides that Medicare receives 100 percent of its conditional payments, while the Estate and the Wrongful Death Beneficiary are forced to accept a settlement that is substantially less than the full value of the claim." ECF 30 at 16. Further, in plaintiff's view, allowing Medicare to recover the full value of the conditional payments raises serious public policy concerns. Quoting *Bradley*, 621 F.3d at 1339, plaintiff claims: "'[Medicare's] position compels

plaintiffs to force their tort claims to trial, burdening the court system. It is a financial disincentive to accept otherwise reasonable settlement offers.'" ECF 30 at 16.

Under the plaintiff's theory, because Ms. Weiss settled her suit for less than 100% of the amount that she was entitled to recover, Medicare's recovery of the conditional payment must be discounted by the same proportion. *Id.* at 15-16. Specifically, Medicare's recoverable percentage of the conditional payment is limited to the settlement amount divided by plaintiff's maximum recoverable amount. *Id.* Ms. Weiss, individually and as Personal Representative of the Estate of Ronald Weiss, settled her suit for $600,000. But, plaintiff maintains that the claims were valued at $3.78 million, and thus she recovered only 15.87 percent of the maximum recoverable value. Accordingly, plaintiff contends that Medicare should only recover 15.87 percent of its conditional payment of $50,648.45, *i.e.*, $8,039.43. *Id.* at 15-16. And, after the required reduction for procurement costs, Medicare would be entitled to a recovery of $5,054.85. *See* ECF 30 at 3, 16 n.8.[10]

In addition to public policy considerations, plaintiff rests its argument on *Bradley* and *Denekas v. Shalala*, 943 F. Supp. 1073 (S.D. Iowa 1996), and, to a lesser extent, on *Arkansas Dept. of Human Svcs. v. Ahlborn*, 547 U.S. 268 (2006). The plaintiffs in *Denekas* settled a wrongful death action after the death of their father, a Medicare beneficiary. 943 F. Supp. at 1075-76. Medicare sought repayment of the conditional payments that it made on behalf of the plaintiffs' father. The *Denekas* Court concluded that Medicare could not recover from plaintiffs as wrongful death beneficiaries. The court reasoned that their complaint did not include damages for their

---

[10] As noted, Medicare discounted its reimbursement claim by nearly 50 percent, to $26,404.20.

father's medical expenses and, under state law, the wrongful death actions were the property of the survivor, not the estate. *Id.* at 1079-80.

In *Bradley*, after the death of the plaintiffs' father, one of the plaintiffs presented a wrongful death claim in a demand letter to the father's medical provider and its liability insurance carrier. 621 F.3d at 1332. Plaintiffs settled for the full value of the available insurance, and a probate court subsequently allocated the settlement on the merits. *Id.* Medicare nevertheless sought full recovery of the conditional payments made on the father's behalf. The *Bradley* Court limited Medicare's recovery to the estate's portion of the settlement. It could not recover from the wrongful death settlement as it contained only "non-medical tort property claims," which under state law belonged to the survivors, not the estate and, by extension, not to Medicare. *Id.* at 1337.

These cases are inapposite. *Denekas* and *Bradley* "were limited to situations in which the plaintiffs had not claimed medical expenses in their wrongful death settlement[.]" *Benson*, 771 F. Supp. 2d at 75. Here, plaintiff asserts, *inter alia*, that the Decedent "suffered damages in the nature of medical expenses . . . ." A.R. 198, ¶ 63; *see also*, *e.g.*, *id.* at 199, ¶ 66; *see also Benson*, 771 F. Supp. 2d at 74-75 ("[Plaintiff's] reliance on both *[Denekas and Bradley]* is misplaced. . . . Here unlike the survivor plaintiffs in *Denekas* and *Bradley*, the plaintiff claimed his mother's medical costs in pursuing his wrongful death action."). Further, *Denekas* was decided before Congress amended the MSP statute in 2003 to clarify the responsibility of the tortfeasor's insurer.

Plaintiff's reliance on *Ahlborn* is also misplaced. The Supreme Court held in *Ahlborn* that the language of the Medicaid statute limited the state's right to recover its entire payment in certain situations. *See* 547 U.S. 268. In her Reply, plaintiff argues that I should extend the Supreme Court's reasoning from the Medicaid statute to the Medicare Secondary Payer statute. *See* ECF 32 at 2, 11 n.5. But, the "Supreme Court did not divine principles of universal application" in

*Ahlborn*; it only interpreted the Medicaid statute. *Hadden*, 661 F.3d at 303; *accord Mason,* 2012 WL 3133801, at *3. I cannot simply apply the Supreme Court's interpretation of one statute (Medicaid) to another statute (Medicare), especially when they contain different language, as is the case here. *Hadden*, 661 F.3d at 303-04 (contrasting the Medicaid Act and Medicare Secondary Payer statute); *accord Mason,* 2012 WL 3133801, at *3.

I also cannot rely on plaintiff's public policy arguments. Whether the arguments are right or wrong, "it is not in the Court's power to rewrite the plain text of the statute." *Mason v. Sebelius*, No. 11-cv-2370-JBS/KMW, 2012 WL 3133801, at *4 (D.N.J. July 31, 2012) (rejecting plaintiff's argument that public policy considerations call for employing equitable apportionment). Nor can the Court "funnel [its] own notions . . . of equitable apportionment" into the MSP statute. *Hadden*, 661 F.3d at 302; *accord Mason*, 2012 WL 3133801, at *3 (citing *Hadden*, 661 F.3d at 302) (rejecting plaintiff's argument that Medicare "is only entitled to reimbursement of some unspecified fraction of Plaintiff's medical costs as a proportionate share of his total recovery").

Instead, I conclude that the MAC was not arbitrary or capricious in declining to employ equitable apportionment. The complaint defines the scope of a plaintiff's "responsibility" for the beneficiary's medical expenses; the settlement does not. "That is true even if the beneficiary later 'compromise[s]' as to the amount owed on the claim[.]" *Hadden*, 661 F.3d at 302 (first alteration in original). Therefore, "a beneficiary cannot tell a third party that it is responsible for all of his medical expenses, on the one hand, and later tell Medicare that the same party was responsible for only 10% of them, on the other." *Id.* at 302.

In the State court suit, plaintiff sought an unspecified sum, in excess of $60,000 in damages, for medical expenses and the pain and suffering of the Decedent. A.R. at 198-99. The suit was settled for $600,000, in exchange for the release of all claims, including those related to Mr.

Weiss's medical expenses. *See* ECF 32 at 12. Therefore, the Estate retains financial responsibility for at least $60,000 of medical expenses, well above the $26,404.20 requested by Medicare. The plaintiff cannot tell Mr. Weiss's medical providers that they are "'responsible for all of the medical expenses, on the one hand, and later tell Medicare'" that the providers were "'responsible for only a compromise percentage of them, on the other hand.'" *Taransky*, 760 F.3d at 315 (quoting *Hadden*, 661 F.3d at 302) (alteration omitted). Applying equitable apportionment here would allow plaintiff to do exactly that.

### 3. Plaintiff's responsibility is not limited to medical expenses for negligence

Plaintiff argues that if it is not entitled to equitable apportionment, its liability to Medicare is limited to damages caused by medical negligence. Plaintiff reasons that the surgery itself was medically necessary, and "Medicare is only entitled to reimbursement from settlement proceeds for medical damages that would have been recovered had the case gone to trial." ECF 30 at 18 (citing *Waters v. Farmers Texas Cnty. Mut. Ins. Co.*, 9 F.3d 397 (5th Cir. 1993)). Therefore, following Maryland law, "a plaintiff can only recover damages for those medical expenses that occurred because of the defendant's negligence." ECF 30 at 18 (citing *Jones v. Malinowski*, 299 Md. 257, 269, 473 A.2d 429, 435 (1984)).

Plaintiff's counsel points out that Mr. Weiss needed the surgery because of his heart condition; the surgery was not negligently *ordered*. ECF 30 at 19. And, even if the surgery was performed perfectly and without incident, Medicare would have incurred the cost of the surgery and related expenses, rendering it unable to recover for those expenses. The surgery was, however, negligently *performed*. Plaintiff's counsel estimates that medical expenses resulting from negligence total $12,179.37. A.R. 215-30 ("Plaintiff's Counsel Letter to Medicare Secondary Payer Contractor") at 227; *see also* ECF 30 at 19.

Three cases form the foundation of plaintiff's argument limiting Medicare's recovery to medical expenses incurred due to negligence. *See* ECF 30 at 18-19 (citing *Waters*, 9 F.3d 397; *Estate of Urso v. Thompson*, 309 F. Supp. 2d 253 (D. Conn. 2004); and *Malinowski*, 299 Md. at 269, 473 A.2d at 435). These cases cannot support the weight of plaintiff's argument. The facts and relevant law in *Waters* and *Urso* predate the 2003 amendments to the MSP statute that clarified how "responsibility" can be "demonstrated." *See* 42 U.S.C. § 1395y(b)(2)(B)(ii). Consequently, they provide no support for plaintiff's theory. *See also Salveson v. Sebelius*, No. 10-4045, 2012 WL 1665424, at *7 (D.S.D. May 11, 2012) (denying the same negligence argument and finding *Urso* inapposite for the same reason).

*Malinowski* is even further afield. It concerns a negligently performed sterilization and does not involve the Medicare Secondary Payer Act or even Medicare. *Malinowski*, 299 Md. 257, 473 A.2d 429. Furthermore, contrary to the assertion of plaintiff's counsel, the opinion—neither in the portion cited by plaintiff nor anywhere else—states or implies that a tort plaintiff can only recover damages for medical expenses resulting from the defendant's negligence. *Id.*; *see* ECF 30 at 18-19 (quoting *Malinowski*, 299 Md. at 269, 473 A.2d at 435) ("[A] plaintiff may recover only those damages that are affirmatively proved with reasonable certainty to have resulted as the natural, proximate, and direct effect of the tortious misconduct.") (alterations in original)).

Moreover, it "is irrelevant whether the" defendant medical providers "could ultimately have been found liable for [Mr. Weiss's] medical expenses if the case had been tried on the merits." *Anderson*, 167 F. Supp. 3d at 900. The key question, once again, is the responsibility of the tortfeasors as demonstrated by the "release . . . of payment for items or services included in a claim against the primary plan[.]" *Hadden*, 661 F.3d at 302 (citing 42 U.S.C. § 1395y(b)(2)(B)(ii)); *accord Anderson*, 167 F. Supp. 3d at 900; *see also Weinstein*, 2013 WL 1187052 at *4-5 (court

refused to parse through medical expenses because the release extended to all of the expenses; therefore, plaintiff had to reimburse Medicare for the full amount); *Salveson*, 2012 WL 1665424 at *5-6 (court refused to determine whether all services for which Medicare sought reimbursement were caused by physician's negligence because all the claims were included in the release).

In the State court complaint, Ms. Weiss and the Estate sought damages for over $60,000 in medical expenses and pain and suffering. But, in the Appeal, the Estate estimated that only $12,180 in medical expenses were incurred due to negligence. As noted, the case subsequently settled for $600,000 and the release of all claims. ECF 32 at 12. Again, plaintiff "'cannot tell a third party that it is responsible for all of his medical expenses, on the one hand, and later tell Medicare that the same party was responsible for only a compromise percentage of them, on the other hand.'" *Taransky*, 760 F.3d at 315 (quoting *Hadden*, 661 F.3d at 302) (alteration omitted). The release of the claim for Mr. Weiss's medical expenses suffices to deem the Estate responsible for the conditional payment. *Hadden*, 661 F.3d at 302; *Anderson*, 167 F. Supp. 3d at 900 (citing 42 U.S.C. § 1395y(b)(2)(B)(ii)).

Therefore, as the MAC stated, "[t]he burden then is on the plaintiff to show which medical expenses were unrelated to the alleged negligence and not used to procure the liability settlement." A.R. at 16. Counsel for plaintiff offered inadequate evidence to "show that the medical treatment attributable to negligence is limited to $12,179.37." *Id.* The MAC found that "counsel offered no evidence to show . . . that the medical expenses for the surgery were not used to procure the liability settlement." *Id.* Moreover, in the Reply, counsel acknowledged that in the settlement, plaintiff released *all* medical claims against the medical providers. ECF 32 at 12; *see also Mathis v. Leavitt*, 554 F.3d 731, 733 (8th Cir. 2009) ("Because appellants claimed all damages available under the

Missouri wrongful death statute, the settlement, which settled all claims brought, necessarily resolved the claim for medical expenses.").

I see no evidence that conflicts with the MAC's decision. Nor am I persuaded that plaintiff's decision was arbitrary or capricious.

### 4. Plaintiff is not entitled to an allocation from the Court

Plaintiff seeks "an allocation by this Court of the settlement funds between the Estate and Wrongful Death Beneficiary." ECF 30 at 5-6; *see also id.* at 20-22. That is, it wants the Court to determine "what portion of the settlement amount was paid to settle the Estate claim, and what portion was paid to settle the claims of the Wrongful Death Beneficiary," Ms. Weiss. ECF 30 at 6. Plaintiff did not cite any statutory authority for this Court to allocate the settlement funds.

An allocation is unnecessary to resolve this case. Ms. Weiss, individually, and as Personal Representative of the Estate of Ronald Weiss, alleged $60,000 in damages and subsequently settled her suit, releasing all claims against the defendant medical providers. ECF 32 at 12. As the MAC rightly noted, "the Medicare lien amount of $26,404.20" is "well below the total amount of medical damages from which Medicare is entitled to recover." A.R. at 15. Therefore, I need not allocate the settlement in order to affirm Medicare's entitlement to recover the lien amount.

### IV. Conclusion

For the reasons set forth above, the MAC's decision is affirmed. An Order follows.


Dated: December 7, 2018                    _____/s/_____
                                           Ellen Lipton Hollander
                                           United States District Judge